Good morning, Your Honor. Good morning, Ms. Phillips. Carolyn Phillips. I'm appearing before this Court on behalf of Raevaughn Embry, who is the petitioner and the appellant in this matter. The issue that's before this Court has to do with whether or not Mr. Embry was, in fact, in custody at the time he made inculpatory statements, and whether those statements, if he was in custody, those statements should have been suppressed at the time of trial. It's our position that the Fifth Appellate District — The problem is they keep telling him, you're not under arrest, you're free to go. Well, what I find interesting about that particular finding of the Fifth District Court of Appeals is that the first time, if we look at the record and we believe, in fact, what the detective testified to at the suppression hearing, the first time that he was told he could leave was when he was in the police car heading to the police station. He wanted to go to the police station, though, didn't he? Pardon me? He wanted to go to the police station. Well, I think that's — He didn't want to be at home. He wanted to go to the police station. I think the bottom line is that he voluntarily went, whosever idea it was, I don't know if that matters so much as that he voluntarily accompanied the police to the police station. So he — if we believe Detective Watts, then we must say he was advised at that time, you're not under arrest and you can leave, understanding, of course, that he doesn't have his own mode of transportation. He gets to the police station. He's left in a lobby for 20 minutes. He's brought back to an interrogation room. He's interrogated by two police officers for over two hours before he has one break for a cigarette break. He gets to leave the room and go to the public, what, cafeteria and get a Coke or Coke? Well, I think what the facts indicate is that he was allowed to take a cigarette break accompanied by the police officers. And it's at that point that the detective said to Mr. Embree, at least that is their testimony, that he was free to leave. And then he came back down. But this is after two hours of interrogation. And this is also after Mr. Embree's requested a cigarette. There's, I think, approximately six pages of further interrogation. And it's not until after Mr. Embree makes an inculpatory statement that he's allowed to get some fresh air. Now, as I read the transcript of this man's interrogation, the statement that he was free to leave seems to occur off tape. All of them are off tape, Your Honor. It's one in the police car. And they go upstairs to the roof, because this is a non-smoking building, even though it's a jail and police department. That's right. Go up to the roof to have a cigarette. And they tell him he's free to leave there, but there's no tape there. Right. And then they go back up to the roof a second time. Yes. And then he's told, at least the policeman says, I told him he was free to leave. Now, this testimony as to whether he was free to leave or told he was free to leave was given in suppression hearing. Yes. The judge made a finding, I take it, that he was told he was free to leave. Yes. That's a finding of fact. The judge observed the witnesses who testified on the subject. I don't know whether Mr. Embree testified to that. No, he did not. I can understand that. Why should we disbelieve or why should we find fault with the trial judge's finding that he was told he was free to leave? Or do you admit that those statements were made? Well, first of all, I question whether or not, in fact, the detectives told Mr. Embree. Why do you question that in view of the trial court's finding? I believe, one, they're saying to and advising a suspect that they can leave is one thing. But what the court is required to do in reviewing whether or not the individual is in custody is whether or not, by the actions of the individual who's being questioned, supports that he's told he can leave. Let me get this straight. Ms. Phillips, you may disagree that the statement, you're free to leave, really means that to a man who is in the police department, right? You're free to leave was not said. You're saying you can't. I understand. I think the court made findings, and at this point, those are the... The court did find. Yes. And what I'm trying to get at, is there any basis for us to upset the trial court's finding that these words were said? Maybe his evaluation of the import of the words would not be accepted by you. Yes. But that's what you're arguing. Yes. You're saying you're free to leave didn't really mean that in the circumstances in which it was said. And I'd like to point out, I believe the Fifth District referred to pages from the interrogation beyond the first 85 pages, which were actually submitted and were considered by the jury. In the portions of that interrogation, it's clear that Mr. Embry is always asking permission. I want to go home. I'd like to go home. Are you going to book me? I'd like to leave. And then the ultimate conclusion to those questions and requests by Mr. Embry is then to read him as Miranda writes. But what I think those portions of the interrogation in that transcript reveal is that this was a police-dominated interrogation process. Whatever the police officers told them, and let's say they said, oh, yeah, you can leave. The fact is the behavior of the police officers, the length of the interrogation, the psychological restraints that were placed on Mr. Embry indicate that he understood he had to ask permission to do anything. He had to ask permission to go to the restroom. He wasn't allowed to leave the room alone ever. So he was never left alone. And I think that the Supreme Court's have considered telling someone, okay, you can leave, is not the end all of this inquiry. It is a factor, but it -- Whether he has a right to leave or not, the police, as proprietors of the police station and the jail, have a perfect right to watch him and stay close to him when he's on their property, do they not? Well, the other part of this could have been, I mean, in looking at other cases that have been considered by the Supreme Court, there have been situations where you stop, you get a glass of water. It's not that a police officer accompanies them anywhere. They can go to the restroom by themselves. If he wanted a cigarette, the possibility would have been that he could have taken the elevator downstairs and smoked outside. Well, here's the problem I have with your argument, and maybe you can help me out. Okay. At page 83 of the interrogation, which is the excerpt of record 294 and then 295, he asks the policeman, I mean, are you guys going to process me? And he asks, are you going to take me to jail or whatever? If you guys are going to book me, just book me, please, because he had a headache. If you guys are going to book me, just go ahead and book me. Now, those statements seem to me to be inconsistent with the idea that he subjectively thought that he was then and there under arrest. I think those statements reveal that he believed that he was not going to be able to leave. He's asking them, are you guys going to hold me? He's asking them that, but he's never he's asking that in context, look, I'm tired. He basically starts this inquiry off by saying he has a headache. And then there is a continued interrogation by the police officers. Oh, that's too bad. You have a headache, and don't you realize that the victim is dead, and that's terrible. Well, are you going to book me or are you not going to book me? But at that point, it would seem to me if he was actually free to leave, that would have been a fine opportunity for the officers to have said, you can leave. We're not booking you, or do you want us to book you? I mean, they toyed around with this for a while. Do you want us to book you? As you're saying, what would we book you for? I think and then it's followed by that those requests are then followed by Mr. Embree's request wanting to know, well, can I go home? Can I go home for one more night? That's after page 85, and we're not even looking at that because that was all suppressed. Let me ask you this. This is an AEDPA case. Yes. We have to give deference to the state court's finding. Yes. And my question is this. Can fair-minded jurists disagree with the outcome of a state trial court on the basis that the trial court had no reason to conclude that Embree thought he was not in custody? It's a very deferential standard. I understand. We may judge it differently. We may think that the trial court was wrong. We may think that the last reasoned decision in the state court was wrong. But is it unreasonable to think that a person who says, are you guys going to process me? Are you going to book me? At that point thinks, well, I'm not arrested. Maybe I can just walk out of here. Well, I think that's an interesting read of that. But I would suggest that. I'm glad that you think it's interesting, but that's not the question I asked you. The question I asked you is, is it reasonable or is it unreasonable to think that? And if it's unreasonable, tell me why. Okay. I would say in the context of the entire circumstances that surrounded Mr. Embree's over like five and a half hours of interrogation that, yes, I think it's an unreasonable application of the law as it exists. But reasonable judges could disagree with that, right? Equally reasonable judges could disagree with that. Well, I think if the judges had considered all the factors involved in these circumstances that surrounded Mr. Embree's presence, then I'd say it was unreasonable. Well, I think the Court said that, but I don't think the Court did that. If you look at the Court's opinion, I think it's in the excerpts of record, Volume 1. It's page – start to page 90. The Court actually goes through and cites and quotes a long passage from Stansbury. And in Stansbury, one of the – there are many factors that the Supreme Court talks about as being important in determining whether or not a suspect is in custody. And some of those factors are completely ignored by the Fifth District. And concerning, for instance, whether or not the environment was dominated and controlled during the course of the interrogation. I think there's – everything that happened in that interrogation room is an indication of how much control and domination those officers had, which – Ms. Phillips, I might agree with you that it disturbs me that he was there for that long, and I recognize that he's in a strange place with people in power. The point is, though, that presumably the – not presumably, the Court says, I considered all that, and I think he was free to go. He wasn't under arrest. What gives me the right to say you're wrong under the deference that we have to pay? Well, the Court still has the responsibility in reviewing the mixed question of law and the fact to determine whether or not that conclusion, that Mr. Embree was not in custody, was contrary to or unreasonable application of the law in the United States. And I – again, I think if you look at the analysis provided by the Fifth District Court of Appeals, you look at the factors that they relied on in coming to the conclusion that Mr. Embree was not in custody, you'll see that they're not in line. They gave a lot of deference and attention to the fact that Mr. Embree, when he originally went to the police station for the interrogation, went voluntarily, and then seemed to completely ignore the fact that from page 37 forward, everything that happened in the interrogation was controlled and dominated by the two detectives that were questioning him. You said he seemed to ignore it. Pardon me? You said he seemed to ignore it. How did he seem to ignore it? Well, the Court in its decision did not even discuss that. They didn't – they didn't include that factor in their discussion about whether or not Mr. Embree was in custody. And it was clear. I think the other – I think the other point here is the fact that there also seems to be, by the Fifth District, sort of a diminishing of the fact that this wasn't just a let's talk about who you are interrogation. It was an interrogation where he was repeatedly told he was lying. He was repeatedly told that he was, in fact, the killer. And then they would give him sort of little pats on the head when he would admit to something that they would say, oh, now we have the truth. Okay, yeah, now you can go – now you can go smoke your cigarette. It's sort of – it is an oppressive, coercive environment. And reading the Fifth District Court of Appeals opinion, you can see how they don't weigh all those factors. And because of that, and in light of the law, it was unreasonable. Ms. Phillips, you've exhausted the time, but we'll give you a minute of rebuttal. Thank you. If it please the Court, Lewis Martinez, appearing on behalf of Respondent. Counsel, could you direct yourself to the argument that the accusatory nature of the interrogation by the two police officers, the first 85 pages of that interrogation, where they repeatedly told Embry that they knew he did it, that he did the murder, that he should come clean, get it off his chest. Both of them repeatedly told him that. How – do you think that the last reasoned decision of the California Court of Appeals, where it's mentioned, I guess it's commencing at page 91 with the Stansbury case and going on to page 99, do you think that that was given the weight which it should have been given in determining whether he was in custody? I believe so, Your Honor. If I could have a minute to repeat. Sure. First of all, if it please the Court, we'd have to remember that we're in Edper review here, so we have to give all presumptions that the state court has acted correctly and that it has given the proper weight. As the questioning of the court indicated earlier, we have to realize that different courts may come to different balances or different scales, but once the state court reaches a decision that's within the bounds of reason giving, controlling United States Supreme Court authority, then that is the end of the matter as far as Edper review is concerned. Well, here's what the Court said, page 99. After going through all the accusatory information that was in the interview, appellant was told at the beginning of the interview that it was voluntary in a police car and on the roof and off the tape, and he was free to leave. But we don't have anything on the record saying that. And the detectives repeated this advisement during the cigarette breaks which took place up on the roof outside the hearing of the microphone. Appellant was never told that he couldn't leave until he told the truth. That's true. And that he couldn't leave until they confirmed his alibi. That's also true. Thus, while appellant was subject to accusatory questioning, the totality of the circumstances reflect that he was not in custody during the interview. Now, what is the reason basis upon which the judge can decide that the accusatory language of the police officers didn't constitute custody? Well, I think the reason basis would come back to two cases, one of which is Yarbrough v. Alvarado, in which, although it wasn't perhaps as direct in this case, the detective told the young person, who was actually younger than the defendant in this case, that the detective had. And so in that sense, that's accusatory questioning. And yet, the Supreme Court, while weighing other factors, determined that it wasn't at least outside the bounds of Ed purview. And then the other case. So you're saying that was the Eldorado case? The Yarbrough v. Alvarado. Alvarado case. Right. Now, the suspect was younger than Embry. Correct. And was similarly told that the statements that she was making didn't match the statements of other witnesses. Correct. But here it goes a little bit beyond that. Here it goes beyond that in the sense that the cops are saying to him, we know you did it. Come clean, dude. Get it off your chest. Right? Isn't that a little bit different? I would say yes, it's a little bit. I would have to agree it's a little bit different than what we have in Alvarado. But again, remembering that we're outside, we're just determining whether the State Court was reasonable. In the other case, I would draw to the equation. That's what I'm trying to find out. What is my idea of is the State Court is reasonable if it has a reason, not maybe the reason I would accept, maybe not. There's only one reason, and there are 14 reasons over here not to accept it, but as long as it has a reason. My question to you is what reason did the State Court use to make a determination that the accusatory statements, which are called out in Stanberry as a basis for determining custody, were not sufficient to constitute custody? Well, I would have to read from the State Court opinion itself, which Your Honor has already addressed. He's told at the beginning of the interview, or rather in the car and during the cigarette break, that he's free to go. Before the interview, he's actually in a public lobby where he could have gone at any time. Before that, or actually when they originally were going to pick him up, or rather interview him, and then when he suggested going to the police station, they thought, oh, that's a good idea, and took him there, but he actually received a call at that point and left him unattended, which the detective said they wouldn't have done with a true suspect. All of these factors of which Mr. Embry was aware, he was never restrained during the interview, he received refreshments when he asked for them, he received smoke breaks when he asked for them. All of these factors, our Respondent would submit good reasons for the State Court to conclude, despite the accusatory questioning, that, in fact, Mr. Embry was not in custody for purposes of Miranda when he, at least up to page, I believe it's 87 in the transcript, which is the point at which the trial court. I didn't mean to interrupt your presentation. Please proceed. And I think, getting back to my presentation, I would tend to disagree with Petition or Appellant, I'm sorry. I tend to disagree with Appellant to this extent. She says or seems to believe that the State Court either didn't consider certain factors or didn't give proper weight to certain factors. I think, first of all, given the standard review here, we should give every presumption to the State Court, considering all relevant factors. And second, for example, at 96, the State Court, ER 96, that's on page 59 of the opinion, but it's at excerpts of Record 96, it specifically mentions, for example, that the Appellant next contends he was subject to accusatory, aggressive, and coerce interrogation techniques because detectives repeatedly declared they knew he killed Jennifer and they had evidence to prove it. So there is a direct statement by the State Court that, yes, he was subject to those interrogation techniques. The State Court considered it, however, it considered all the other factors, which tended to show that he was not in custody. And the State Court reached a decision. Even if we disagree with that decision here, that's not what we're determining today. We're simply determining whether, under Edper review, the State Court is within the bounds of controlling the United States Supreme Court authority. Kennedy. But the Court of Suffolk, page 96, says Appellant next contends he was subject to accusatory, aggressive, and coercive interrogation techniques because the detectives repeatedly declared that they knew he killed Jennifer. They had the evidence to prove it. And they just wanted to know why. As discussed ante, however, the officer's focus of suspicion is irrelevant unless such suspicion is manifested to the suspect. Well, he's a suspect and they manifested it to him. So how could the Court reasonably say that their suspicion was not manifested to Embry when they told him these things? Actually, I don't – I don't – I would not imagine that the Court said there – I don't read it as saying that they said it wasn't communicated to the suspect. I'm not hearing what you're saying. I wouldn't – I wouldn't agree that the State Court was saying that it wasn't communicated to Mr. Embry. In fact, it was. And, in fact, in the very first sentence of the next paragraph, it says accusatory questioning communicates to the suspect that he or she has become the focus of police investigations. So that seems to be an acknowledgment that, in fact, that's – So they did take into account that this accusatory questioning was directed to him. Okay. Yes. Yes. If I could have a – I think that's probably most of what I have, unless the Court has further questions for me. No further questions. Thank you very much. Do you want a minute of rebuttal? Thank you, Your Honor. Just briefly, in the question that the Court asked earlier regarding whether or not the statements by Mr. Embry, are you going to book me, are you going to book me, it may indicate that Mr. Embry understood that he wasn't presently arrested, and that's that he was arrested during the interrogation until after he was Mirandized. But our position is that he was detained. He was detained and he believed, and I think the record reflects clearly, that he couldn't leave. He couldn't leave until he provided to these officers the truth, and the truth But they never said that to him. They said, we urge you to tell the truth because it's good for your soul. Not because it will make you able to leave through that courtroom, through that door. However, every time that Mr. Embry responded to their questions, it was countered that he wasn't telling the truth. There was more. There was something else that he wasn't satisfying. So there was always a sense in Mr. Embry's mind that in order for him to be able to leave this interrogation, he was going to have to satisfy Point to me any point in the interrogation where he's told, you ain't leaving here until you tell the truth. Well, I think that did happen, but it did happen after and before the Miranda, but after the pages that the Court is considering here. What I think All we have is a record here. Is there any place on those first 85 pages where there's either directly or impliedly communicated to Mr. Embry that he will not be able to leave the station house until he tells them the truth? No. Okay. Thank you very much. Thank you. All right. The matter of Embry v. Busby will be submitted.
judges: Walter, Noonan, Bea